# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,

v.                                                               No. CIV 12-1035 RB/LFG
                                                              No. CR   11-1163 RB

FRANCISCO ADAN LOPEZ,

      Defendant/Movant.

### ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION OF DISMISSAL, WITH PREJUDICE

THIS MATTER is before the Court on the Magistrate Judge's Findings and Recommended Disposition ("findings and recommendations") [Doc. 10], filed December 10, 2012, proposing that Defendant/Movant Francisco Adan Lopez's ("Lopez") § 2255 motion be denied and dismissed with prejudice, and that a certificate of appealability not issue.

On December 31, 2012, Lopez filed timely objections.[1] [Doc. 11.] Plaintiff/Respondent United States ("government") filed a response to the objections. [Doc. 12.] The Court conducted a *de novo* review of those portions of the Magistrate Judge's findings and recommendations to which Lopez objects.

### **Background**

Magistrate Judge Lorenzo F. Garcia summarized the background of the criminal proceeding, including Lopez's long term residency in the United States, the 2011 charges against Lopez, the plea

---

[1] Lopez is represented by counsel.

agreement reached between Lopez and the government, the details of Lopez's written plea agreement, and testimony Lopez provided at the May 5, 2011 plea hearing. [Doc. 10, ¶¶ 3-37.]

Judge Garcia provided extensive analysis of Lopez's claims of ineffective assistance of counsel in relation to allegations that Lopez's trial attorney failed to adequately advise him about the "deportation immigration consequences for entering a plea of guilty." The Magistrate Judge also reviewed Lopez's contentions that "the plea admonishment, together with inaccurate and misleading advice from counsel, violate[d] the Fifth Amendment Due Process." [Id.]

## Lopez's Objections

Lopez submitted 27 pages of objections to the Magistrate Judge's findings and recommendations. [Doc. 11.] The Court reviews, *de novo*, each of the objections.

### I. Ineffective Assistance of Counsel Claim

Lopez argues that Judge Garcia erroneously concluded that Lopez was fully informed of the immigration consequences before pleading guilty, citing to pages 5, 8, and 21[2] of the findings and recommendations. In citing these pages of the findings, Lopez sets out the same testimony in the plea hearing or language from the plea agreement that Magistrate Judge Garcia provided in his findings and recommendations. Lopez then argues that this same language or testimony did not inform Lopez of the "succinct, clear, and explicit" mandatory deportation consequences of pleading guilty to this offense. [Doc. 11, at 3.] Lopez asserts that even if Lopez's attorney had read the plea agreement "word for word," counsel would not have fulfilled his constitutional duty under Padilla v. Kentucky, 559 U.S. __, 130 S.Ct. 1473 (2010). [Doc. 11, at pp. 3-4.]

---

[2]It would have been helpful had counsel referred to specific paragraph numbers to which Lopez objected, rather than general page numbers containing several paragraphs.

Lopez's argument lacks specificity regarding how the Magistrate Judge allegedly erred in his findings about the language of the plea agreement or testimony at the plea proceeding. This Court concludes that Lopez merely restates arguments that the Magistrate Judge properly considered and rejected. The Court overrules objections set out under ¶ 1 (Doc. 11, at 2-4) of the objections.

Lopez next contends that Judge Garcia erroneously determined that Lopez knowingly and voluntarily consented to enter into a plea agreement before Magistrate Judge Lourdes Martinez on May 5, 2011, citing p. 3 of the Magistrate Judge Garcia's recommendations and findings. [Doc. 11, ¶ 2.] Essentially, Lopez makes the same conclusory argument that the Court overruled above, *i.e.*, that a plea agreement cannot be knowing and voluntary if a defendant does not know of the "succinct, clear and explicit" immigration consequences. In so arguing, Lopez again relies on Padilla, 130 S.Ct. at 1483.

Lopez asserts that his trial attorney could easily have determined that the plea agreement would make Lopez eligible for removal merely by reading the text of the statute. Instead, Lopez argues that his attorney "provided [him] with false assurance" and further told him that he would be able to "fight to stay" after pleading guilty.

The plea agreement, at issue, clearly, succinctly and explicitly provided that "because Defendant is pleading guilty to a controlled substance offense, removal is presumptively mandatory." The plea agreement further stated that "Defendant nevertheless affirms that [he] wants to plead guilty regardless of any immigration consequences that defendant's plea may entail, even if the consequences include defendant's automatic removal from the United States." [Doc. 46, ¶ 13; Doc. 10, ¶ 13.] The language clearly and explicitly informed Lopez of the removal consequences of his plea agreement. [Doc. 46, ¶ 13.]

3

Moreover, Lopez conceded in the written plea agreement that he "freely and voluntarily" entered the plea agreement, signed it, and read the entire agreement. [Doc. 46, ¶¶ 17, 20, and at10.] At the plea hearing, Magistrate Judge Martinez advised Lopez of the consequences of pleading guilty. The Magistrate Judge specifically told Lopez that one consequence he faced was "that based on your status in this country and the charge you're facing, it's almost certain you will be deported from this country and you won't be allowed to return again illegally without facing further and more serious Federal charges." [Doc. 1, Ex. 12,[3] D31] Lopez testified under oath that he understood this consequence. Magistrate Judge Martinez continued to discuss deportation consequences of the guilty plea. Judge Martinez stated to Lopez that he was going to be deported because of a mandatory deportation provision and the fact that Lopez was pleading to two drug offenses. [Id., D26.] Lopez testified that he understood and would plead separate to a deportation proceeding. [Id.]

Magistrate Judge Garcia specifically addressed the pertinent standards set out in Strickland v. Washington, 466 U.S. 668 (1984) and in Padilla v. Kentucky. [Doc. 10, ¶ 35.] Judge Garcia also examined Lopez's affidavit, wherein Lopez asserted that his trial counsel told him he had nothing to worry about and Lopez's belief that his trial counsel told him he could "fight to stay" in the United States. [Doc. 10, ¶ 41.] This Court also reviewed the pertinent legal standards and Lopez's affidavit statements.

The Court concludes that the language of the plea agreement, clearly outlining immigration consequences of the guilty plea, Lopez's signature on the plea agreement, stating it was read to him in Spanish, and portions of the plea transcript reflecting Magistrate Judge's Martinez's thorough

---

[3]Exhibit 12 attached to the petition is also marked as Exhibit D. The Court refers to page numbers within the exhibit with D followed by the page numbers. Exhibit 12 or D contains copies of the plea agreement and plea transcript.

discussion with Lopez about immigration consequences of the plea demonstrate Lopez's plea was knowing and voluntary.

Lopez provides nothing but duplicative objections that the Magistrate Judge thoroughly analyzed and rejected. Lopez identifies no specific allegations not addressed by the Magistrate Judge. The Court overrules objections set out in paragraph 2. [Doc. 11, at 4-5.]

In paragraph 3 of his objections, Lopez restates the same argument, *i.e.,* that neither the plea agreement nor Magistrate Judge Martinez's discussion on the record with Lopez identified the "drastic immigration consequences" of the plea agreement. The argument is unsupported and could not be further from the truth as demonstrated by both the language in the plea agreement and the transcript of the plea hearing. The Court overrules the objections. [Doc. 11, ¶ 3, at 5-7.]

In paragraph 4 of his objections, Lopez unsuccessfully makes the same argument yet again. He argues that the plea agreement does not clearly and succinctly set forth the consequences of Lopez's guilty plea, an objection the Court already overruled. Lopez further urges that the habeas record demonstrates that Lopez's trial attorney failed to investigate the immigration consequences of pleading guilty to the indictment, and thus was unaware of those consequences. [Doc. 11, at 8.] Lopez did not identify any portion of the habeas record that supports his position.

In support of this objection, Lopez contends that the government failed to obtain an affidavit of Lopez's trial attorney to demonstrate that trial counsel did not advise Lopez of the "succinct, clear

5

and explicit" immigration consequences of the plea.[4] The Magistrate Judge considered and rejected this argument. [Doc. 10, ¶¶ 49-61.] Based on the record and circumstances in this case, this Court concludes that an affidavit from Lopez's trial attorney was not necessary. Lopez identifies no specific error by the Magistrate Judge, and the Court's own review of the record finds no error. The Court, therefore, overrules the argument presented at pp. 7-10 of the objections. [Doc. 11, ¶ 4.]

In the next portion of his objections, Lopez discusses the facts in Padilla v. Kentucky, arguing that they are similar to Lopez's situation and that the Magistrate Judge erred in concluding that Lopez failed to satisfy the prejudice prong of the Strickland inquiry.[5] For example, Lopez contends that like Jose Padilla in Padilla v. Kentucky, Lopez was a lawful permanent resident of the United States who had lived here for many years, that Lopez also was employed and provided support for his family who are United States citizens, and that Lopez, like Padilla, would never have pled guilty had he truly understood the deportation consequences of the guilty plea. [Doc. 11, at 10-11.]

---

[4]The Court observes that the government might well have argued that Lopez did not obtain an affidavit from his trial attorney to support his position. After all, Lopez has the burden of demonstrating ineffective assistance of counsel. *See, e.g.,* Belliard v. Jones, 2012 WL 3518052, *7 (W.D. Okla. July 18, 2012) (unpublished) (court noted that the petitioner's allegations that counsel failed to advise him of immigration consequences of the plea deal were not supported by any evidentiary materials, e.g., the petitioner did not support his claim with an affidavit from his trial counsel stating that trial counsel did not advise him of the deportation consequences of the plea).

[5]As correctly noted by Magistrate Judge Garcia, failure to meet one prong of the Strickland test provides sufficient grounds to deny an ineffective assistance of counsel claim. In other words, once the Magistrate Judge determined that Lopez's trial counsel's performance did not fall below an objective standard of reasonableness, there was no need to analyze the prejudice prong. Nonetheless, Judge Garcia elected to review the facts in light of the prejudice prong of the test, concluding that Lopez failed to demonstrate prejudice. [Doc. 10, ¶ 62.] Here, the Court overruled all of Lopez's objections in relation to the argument that his trial attorney provided constitutionally defective performance. While there is no need to address objections to the Magistrate Judge's analysis of the prejudice prong, the Court considers all of Lopez's objections.

While certain underlying facts in Padilla and this case are similar, there are key distinctions between the two matters. First, the United States Supreme Court, in Padilla, did not reach the issue of prejudice and remanded for the state courts to address that question. Padilla, 130 S.Ct. 1478. In Padilla, the Supreme Court concluded that "constitutionally competent counsel would have advised [Padilla] that his conviction for drug distribution made him subject to automatic deportation." The Supreme Court discussed Padilla's allegations that his attorney "not only failed to advise him of this consequence prior to his entering the plea, but also told Padilla that he " 'did not have to worry about immigration status since he had been in the country so long.' " These allegations were sufficient to satisfy the first prong of the Strickland inquiry. Id.

Second, in Padilla, there was no discussion of what occurred in the present case, where both the written plea agreement and the colloquy at the plea hearing conclusively demonstrated that Lopez was fully and clearly aware of mandatory deportation consequences. Lopez's subsequent, self-serving affidavits are contradicted by his earlier sworn testimony before the Court and contradicted by his attorney's representations during the plea colloquy. Lopez failed to present evidence that his attorney affirmatively mislead him and provided false assurances concerning mandatory removal proceedings in light of the conviction, in contrast to what occurred in Padilla. The written plea agreement, signed by Lopez and his attorney, and the plea hearing colloquy demonstrate that Lopez's attorney accurately advised him about the immigration consequences of the guilty plea.

Lopez also takes the position that the habeas record fails to support the Magistrate Judge's finding that Lopez did not demonstrate prejudice. Moreover, Lopez argues that Judge Garcia "utilized a pre-Padilla approach to 'prejudice.'" [Doc. 11, at 13.] As already noted, the Supreme

7

Court, in Padilla, did not address the prejudice prong of the Strickland inquiry. Padilla, 130 S.Ct. at 1483-84. The Court rejects and overrules the above-described objections. [Doc. 11, at 10-15.]

Lopez sets out three more specific objections at pages 15-22 of his pleading, in reference to alleged prejudice. [Doc. 11, at 15.] Lopez averred that he would have gone to trial, regardless of the outcome, in the hope that he might be acquitted. The Magistrate Judge found this assertion defied credibility in view of a number of circumstances, including the benefits Lopez gained by pleading guilty. Lopez objects on grounds that the Magistrate Judge's statement is not supported by the record. [Doc. 11, at 15.] Lopez further asserts that a decision rejecting the plea agreement would have been rational under circumstances where Lopez and his family had lived in the United States for so many years here. He claims if he had insisted on proceeding to trial, the government would have had to prove guilt beyond a reasonable doubt and that Lopez would "have had a chance of avoiding the conviction that subjected him to mandatory deportation." [Doc. 11, at 16.] Lopez argues that notwithstanding Magistrate Judge Garcia's conclusion, "the habeas evidence demonstrates that Lopez would have risked doing additional time in jail if it meant he had a chance to stay in the United States" with his family. [Id.] With the exception of Lopez's subsequent self-serving affidavit statements, there is no such "habeas evidence."

Lopez, however, relies on a Third Circuit Court of Appeals decision, United States v. Orocio, 645 F.3d 630 (3d Cir. 2011), and urges this Court to adopt standards addressing prejudice set forth in that opinion. The Third Circuit's primary holding in Orocio was that Padilla was retroactively applicable on collateral review, an issue not before this Court. *See* Orocio, 645 F.3d at 634, 637-41 (deciding retroactivity of Padilla under Teague v. Lane, 489 U.S. 288 (1989)).

8

The Court, in Orocio, also discussed the Strickland prongs. The defendant, in Orocio, like Lopez, argued that his attorney had not informed him of the consequences of his guilty plea, *e.g.,* automatic removal for the convicted offense. The Third Circuit repeated language from Padilla, finding that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation," advice that apparently was not given in Orocio. Id. at 642.

The Orocio Court examined whether the defendant provided evidence of a "reasonable probability" that, but for his attorney's unprofessional errors, the result of the proceeding would have been different. Id. at 643. The Court observed that the Supreme Court, in Padilla, did not resolve the issue of prejudice. The Court then reviewed a number of older cases, noting that there was never a requirement that the defendant affirmatively demonstrate likely acquittal at a trial, if he elected to proceed to trial rather than accept a plea negotiation.[6] Id..

Under the circumstances in Orocio, the Third Circuit determined that the defendant reasonably might have chosen to go to trial even though he faced a drug distribution charge that carried a 10-year minimum sentence. Id. at 645. The Court reasoned that at age 27, Orocio "rationally could have been more concerned about a near-certainty of multiple decades of banishment from the United States than the possibility of a single decade in prison." Id. Thus, assuming Orocio could establish at an evidentiary hearing that his attorney failed to inform him of the grave immigration consequences of acceptance of the plea agreement, at the time his guilty plea agreement was proffered, the defendant might be able to show prejudice. Thus, the case was remanded to the district court.

---

[6]The Court observes that the Magistrate Judge also noted that there was no requirement of an affirmative demonstration of likely acquittal at trial to prove prejudice under Strickand. [Doc. 10, ¶ 64.]

9

The distinction between Orocio and the facts at hand is that the Court, in Orocio, provided no discussion of the language of a written plea agreement that explicitly advised the defendant more than once of the immigration consequences or of the district court's colloquy at the plea hearing where the defendant was repeatedly advised of the plea consequences and testified that he understood those consequences as was true in this case. See Jiminez v. Holder, 2011 WL 3667628, *5 (S.D. Cal. Aug. 19, 2011) (unpublished) ("Given that petitioner's plea agreement specifically included a stipulation referencing removal from the United States and the District Court's plea colloquy which explained that petitioner was likely to be deported, petitioner cannot demonstrate that her counsel's failure to advise her of the immigration consequences of her guilty plea prejudiced her.") (*citing*, in part, United States v. Davis, 428 F.3d 802, 804 (9th Cir. 2005)).

The Court finds Orocio distinguishable and inapplicable to the present facts where clearly, Lopez knew of the grave consequences of his guilty plea and had ample opportunity to refuse to plead guilty. Lopez testified under oath to Magistrate Judge Martinez that he understood he would be deported because of the mandatory deportation provision. [Doc. 1, Ex. 12, D43.] Lopez also agreed that the entire plea agreement, including provisions about mandatory removal, was read to him in Spanish and that he understood each and every provision of the plea agreement. [Id., Ex. 12, D35-36.]

The Court overrules Lopez's objections with respect to the element of prejudice and his reliance on Orocio. [Doc. 11, ¶ 1, at 15-18.]

Lopez next objects to the Magistrate Judge's conclusion that Lopez could have obtained a better plea agreement had he insisted on a different plea offer. Lopez argues that he did not have the opportunity to make such a request because his trial attorney never advised him of certain deportation

10

consequences of the guilty plea. The Magistrate Judge stated in his findings and recommendations that Lopez's position that he could have achieved a different plea agreement with the government that limited immigration officials' rights to remove him "assumes, with no support for the assumption, that such a plea agreement would have been extended." [Doc. 10, ¶ 63.] Contrary to Lopez's objections, the Magistrate Judge did not state Lopez "had to show" that such an agreement was available. The Magistrate Judge, however, was unpersuaded by Lopez's speculative argument. Moreover, the government responded that no such creative plea arrangement was available to Lopez. Thus, there is no support for Lopez's speculation that he could have insisted on and obtained a better plea agreement.

Lopez also argues that his attorney should have asked for "the immigration safe disposition." [Doc. 11, at 19-20.] In support, Lopez cites Janvier v. United States, 793 F.2d 449, 455-456 (2d Cir. 1986), where the Second Circuit held that the Sixth Amendment is violated when defense counsel does not request a judicial recommendation against deportation for a non-citizen client. Yet, Lopez candidly admits that a judicial recommendation against deportation was abolished years earlier. [Doc. 11, at 19, n.6.] Lopez cites no Tenth Circuit authority requiring or even contemplating that counsel ask for "immigration safe disposition." Indeed, Lopez states that the supposed prejudice is that counsel failed to ask for "immigration safe disposition, "not that the request would have necessarily been granted." [Doc. 11, at 20.]

The Court finds no authority for the proposition that an attorney's failure to request "immigration safe disposition," a disposition that may not even exist, amounts to prejudice. Thus, the Court overrules the objections. [Doc. 11, ¶ 2, at18-20.]

In addition, Lopez objects to the Magistrate Judge's reference to Lopez's sworn testimony that he understood and knew of the consequences of his guilty plea, including mandatory removal from the country and Lopez's voluntary and knowing entry of the guilty plea. Lopez notes that Magistrate Judge found Lopez could not demonstrate prejudice because of the "succinct, clear and explicit" immigration consequences of the plea agreement that were provided to him "by other sources," *i.e.,* from the Court and the plea agreement itself, rather than by trial counsel. [Doc. 11, at 20.] Lopez argues that Judge Garcia's conclusion is not consistent with Padilla and is not supported by the habeas record. According to Lopez, his trial attorney's alleged failure to tell him about mandatory removal as a result of the guilty plea, notwithstanding the thorough and repeated explanations of these exact details provided to Lopez in the plea agreement that he signed and the plea hearing during which he participated with counsel, demonstrates prejudice.

The Court disagrees based on the circumstances present in this case and for the same reasons explained above. *See, e.g.,* United States v. Gomez-Lugo, 410 F. App'x 148, 150-51 (10th Cir. Feb. 2, 2011) (unpublished) (defendant was plainly made aware that he could be deported, whether or not he pleaded guilty; for example, the PSR, which the defendant read and reviewed in Spanish, stated that the defendant was a citizen and national of Mexico with no legal authority to be in or reside in the U.S.; given defendant's awareness that he would be deported, he cannot establish prejudice under Strickland); United States v. Nunez, 2012 WL 1701664, *2-3 (D. Kan. May 15, 2012) (unpublished) (defendant similarly claimed counsel was ineffective for failure to advise him of the immigration consequences of pleading guilty; court rejected claim based on the defendant's sworn statements in plea agreement and sworn testimony in plea hearing that he understood consequences of guilty plea).

12

Like the defendant/petitioners in the above described cases, Lopez was thoroughly advised about the immigration consequences of his guilty plea. Lopez was aware he would be removed from the United States, based on the language of the plea agreement and his own testimony in the plea hearing. At a minimum, he cannot demonstrate prejudice. Therefore, the Court overrules the objections Lopez sets forth as to prejudice. [Doc. 11, ¶ 3, at 20-22.]

"Surmounting Strickland's high bar is never an easy task." Padilla, 130 S.Ct. at 1485. "Even under de novo review, the standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 131 S.Ct. 770, 787 (2011). In sum, the Court concludes that Lopez did not overcome Strickland's "high bar," with respect to his ineffective assistance of counsel claim. Stated differently, Lopez did not provide evidence sufficient to overcome the strong presumption that his attorney's actions were reasonable or evidence showing a reasonable probability, but for counsel's alleged error, Lopez would not have pled guilty and would have insisted on going to a trial. The Court could sustain the Magistrate Judge's findings and recommendation as to the ineffective assistance of counsel claim under either prong of the two part test set forth in Strickland. Here, the Court concludes Lopez failed to satisfy both prongs.

## II. Fifth Amendment Claim

In the findings and recommendations, the Magistrate Judge observed that Lopez's briefly-described Fifth Amendment claim was unclear. [Doc. 10, ¶ 71.] In the objections, Lopez contends that he adequately set forth alleged due process violations. He argues that the plea agreement was not "tailored to address Lopez's 'succinct, clear and explicit' immigration plight making it unconstitutionally deficient to adequately warn [Lopez] of certain banishment from his life and family in his adopted country." [Doc. 11, at 22.] He again asserts that "the plea agreement is anything but

13

'succinct, clear and explicit.'" [Doc. 11, at 23.] Lopez objects to use of boilerplate language in the plea agreement.

The Magistrate Judge concluded that if Lopez's position was premised on an argument that Lopez's guilty plea was taken involuntarily, unintelligently, and unknowingly in violation of the Fifth Amendment's due process clause, based on allegations that the plea agreement language was "murky," the Court rejected that position. Judge Garcia found no evidence that the plea agreement was vague or confusing and concluded that Lopez entered a knowing, intelligent and voluntary plea of guilty.

Lopez identifies no alleged errors committed by Magistrate Judge Garcia. Moreover, the Court carefully and thoroughly reviewed the language of the plea agreement and the transcript of the plea hearing, as discussed at length above. The plea agreement and plea proceeding clearly and explicitly outlined the immigration consequences of Lopez's decision to plead guilty.

Any evidence presented by Lopez that he was not advised of the immigration consequences of his guilty plea are belied by the record. The Court finds that Lopez was informed of all the requisite material consequences flowing directly from his voluntary, knowing and intelligent decision to plead guilty. Thus, the Court overrules his objections. [Doc. 11, at 22-24.]

## III. Certificate of Appealability

The Magistrate Judge recommended that a certificate of appealability not issue because Lopez failed to make a substantial showing that he was denied a constitutional right. [Doc. 10, at 26.] Lopez objects to that finding or conclusion. Lopez asserts that given the "evidence presented in [his] case, jurists of reason would find it debatable whether Lopez validly claims a denial of his Fifth and Sixth Amendment rights." [Doc. 11, at 25.]

14

The Court disagrees that the Magistrate Judge failed to recognize the "applicable legal standard" in recommending denial of the certificate of appealability and overrules Lopez's objections.

## **Conclusion**

For the above-stated reasons, the Court agrees with the Magistrate Judge's findings and recommendations and overrules all of Lopez's objections.

IT IS THEREFORE ORDERED that the Magistrate Judge's findings and recommendations are adopted by the Court, that no Certificate of Appealability shall issue, and that Mr. Lopez's § 2255 motion [Doc. 1] and this action are dismissed, with prejudice.

_____
UNITED STATES DISTRICT COURT